[Cite as *In re C.R.*, 2020-Ohio-4676.]

STATE OF OHIO       )             IN THE COURT OF APPEALS
                       )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: C.R.
      C.M.
      C.M.

C.A. No.     29608

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 19 03 0187
                DN 19 03 0188
                DN 19 03 0189

DECISION AND JOURNAL ENTRY

Dated: September 30, 2020

SCHAFER, Judge.

{¶1} Appellant, J.C. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her two minor children dependent children and placed them in the temporary custody of the father of one of the children ("Father"). This Court affirms.

## I.

{¶2} When this case began, Mother and Father lived together with three children: C.R., born April 13, 2007; C.M., a boy, born August 22, 2012; and another child with the initials C.M., a girl, born September 28, 2015. Because there are two children with the initials C.M., and the alleged abuse of the male C.M. is the focus of this appeal, he will be referred to throughout this opinion as "C.M." The female C.M. will be referred to as "the youngest child."

{¶3}    Although Mother has appealed the adjudication and disposition of all three children, she is not the mother of C.M.  Because Mother lacks standing to appeal the state's interference in the parental rights of that child, the appeal pertaining to C.M., born August 22, 2012, is dismissed.  *See*, *e.g.*, *In re A.S.*, 9th Dist. Summit No. 23456, 2007-Ohio-2195, ¶ 9; *In re J.O.*, 9th Dist. Summit No. 22510, 2005-Ohio-2399, ¶ 9.  Nevertheless, the facts underlying C.M.'s adjudication as an abused child are directly relevant to this appeal because Mother's two children were adjudicated dependent because they lived in the same home in which C.M. had been abused.  *See* R.C. 2151.04(C).

{¶4}    On June 18, 2018, while Father was at work and the three children were home with Mother, C.M. sustained serious burns on his hands from hot water running from the faucet in the upstairs bathroom sink.  Mother called Father, who immediately came home, and Mother and Father took C.M. to the hospital.  C.M. was treated for his burns.  Hospital personnel contacted the police and Summit County Children Services Board ("CSB") and an investigation ensued into the cause of the child's burns.

{¶5}    CSB filed and dismissed several complaints after the incident because the cases did not proceed to timely disposition.  This case, filed March 1, 2019, resulted in a timely adjudication and disposition.  Prior to adjudication, Mother was ordered to vacate the home.

{¶6}    Throughout this case, all parties agreed that C.M.'s burns had been caused by hot water running from the faucet of the upstairs bathroom sink.  The sole dispute was whether C.M. accidentally burned himself while he washed his own hands, or the injury was caused by Mother intentionally holding his hands under hot water.

{¶7}    At the hearing, the trial court heard testimony from witnesses who had interviewed Mother and C.M. following the incident; witnesses who had evaluated the potential temperature

of the hot water running from the faucet; medical experts who had examined C.M. or records about his injuries; and C.R., the oldest child who had been present in the home during the incident. Upon the advice of counsel representing Mother in her criminal case, Mother did not testify.

{¶8} Following the adjudicatory hearing, the magistrate found that C.M. was an abused child, and that C.R. and the youngest child were dependent for that reason. The children were later placed in the temporary custody of Father under an order of protective supervision. The trial court immediately adopted both decisions, pending the filing of timely objections.

{¶9} Mother filed objections to the magistrate's adjudicatory and dispositional decisions, which were later overruled by the trial court. The trial court adjudicated C.R. and the youngest child dependent because of Mother's abuse of C.M. The trial court placed both children in the temporary custody of Father under an order of protective supervision by CSB. Mother appeals and raises two assignments of error, which will be addressed together for ease of discussion.

II.

**ASSIGNMENT OF ERROR I**

[CSB] DID NOT PRESENT CLEAR AND CONVINCING EVIDENCE THAT C.M. AND HIS SIBLINGS WERE ABUSED OR DEPENDENT AND, THEREFORE, THE FINDINGS OF ABUSE AND DEPENDENC[Y] WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**ASSIGNMENT OF ERROR II**

THE DECISION THAT C.M. WAS ABUSED AND THAT HIS SIBLINGS WERE DEPENDENT WAS NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE.

{¶10} This Court will address the assignments of error together because Mother asserts through both that the trial court's determination that she abused C.M. was not supported by the evidence presented at the hearing. The trial court's adjudication of C.M. as an abused child was the basis of its adjudication that C.R. and the youngest child were dependent because their

"condition or environment" warranted the state in assuming their guardianship. R.C. 2151.04(C). The evidence was not disputed that C.M. had used the upstairs toilet, Mother assisted him in wiping his behind, C.M. had his hands under hot running water after the cold water was turned down or off, and C.M.'s hands were burned by the hot water coming from the sink faucet. The only disputed issue was whether C.M. burned his hands by accidentally adjusting the hot or cold water while washing his own hands or by Mother intentionally holding his hands under hot water.

{¶11} Mother challenges both the sufficiency and weight of the evidence. "[S]ufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a [judgment] is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶12} CSB presented sufficient evidence to demonstrate that Mother had intentionally burned C.M.'s hands by holding them under hot, running water. Mother's defense attempted to undermine the credibility of CSB's witnesses and demonstrate that she had left C.M. in the bathroom to wash his hands and, if he had turned off the cold water, the water could have been hot enough to burn his hands in less than a second while he washed his hands.

{¶13} At the hearing and on appeal, Mother focused much of her defense on evidence about the potential temperature of the hot water running from the faucet during the incident.

Mother presented the testimony of an expert who had determined that, at the time of the incident, the water coming from the faucet could have been as hot as 159.9 degrees. Mother's expert testimony disputed CSB's evidence that the temperature of the water was probably about 125 degrees at the time C.M. sustained his burns.

{¶14} Mother has repeatedly emphasized that her expert was more qualified and that he conducted more precise tests to determine the temperature of the water. Even if the water temperature evidence presented by Mother's expert was more accurate, the disputes in the evidence were not only about the temperature of the water when C.M. was burned. CSB's case was strongly supported by the evidence, while Mother's defense that C.M. had accidently burned himself was contradicted by most of the evidence about how C.M. sustained his injuries.

### Statements of Witnesses at the Home

C.M.

{¶15} C.M., who was five years old at the time of the incident, did not testify but his statements came in through the testimony of a hospital social worker, a police detective, and a CSB intake worker, each of whom interviewed the child after the incident. C.M. reported that he was burned while he and Mother were alone in the bathroom and Mother held his hands under hot water. Notably, C.M. never said during the investigation that he was playing in the water, that his younger sister was present in the bathroom, or that he had accidentally burned his own hands while washing them.

{¶16} Mother challenged the credibility of several aspects of C.M.'s statements. For example, C.M. had said that Mother held his hands "in" the water, not "under" the running water, perhaps suggesting that his hands were submerged in a sink filled with water. She also pointed to C.M.'s statement that his hands were held in the water for "six hours" and his later statement that

it was a "bear" who burned his hands. Mother also challenged C.M.'s competency to correctly recall the incident by pointing to his expressed confusion about his birthdate and age.

{¶17} To support the reliability of then five-year-old C.M.'s statements that Mother had burned him, CSB presented the opinion testimony of a forensically trained social worker and a pediatrician at Akron Children's Hospital who specializes in child abuse and neglect. Both witnesses believed that C.M.'s statements were appropriate for his age, given his apparent failure to reach certain developmental milestones, such as counting to ten without assistance. The social worker, who had been forensically trained to interview young children, expressed her belief that C.M. was competent to describe the details of the incident.

{¶18} The pediatrician explained that C.M. was not developmentally mature enough to understand the distinction between his hands being held "under" running water and being held "in" still water, and he testified that C.M.'s reference to "six hours" simply meant a long time in the young child's mind. The pediatrician also explained that it is not uncommon for child victims to recant their earlier statements if they perceive that they are causing upheaval in the family. CSB emphasized that C.M. made the statement about the "bear" burning his hands during an interview while Father was in the room.

Mother

{¶19} Mother's statements about the incident also came in through the testimony of witnesses who had interviewed her about the incident. Mother undermined her own credibility, however, because she described conflicting versions of the relevant events. Mother initially reported that she had been in the bathroom when C.M. burned his hands. She later told the police detective that she had left the bathroom while C.M. and the youngest child, then less than three

years old, were playing in the water in the sink. When she left the bathroom, she initially said that C.M. was pulling up his pants.

{¶20} The police detective testified that she questioned Mother further because she did not understand why, if both children were playing in the water, C.M. was the only child to sustain any injury. Mother then reported that she put soap on C.M.'s hands, left him in the bathroom with the water running, and went downstairs to check on the laundry. She said that she ran back upstairs when she heard C.M. screaming.

{¶21} Mother told the CSB intake worker that she had left C.M. alone in the bathroom to wash his hands and told C.R. to take the dog outside. She did not mention where the youngest child was at that time. Mother further reported that, when she heard C.M. scream and went to assist him after he burned himself, she called C.R., who came into the bathroom to help her treat the child's burns with cold water.

C.R.

{¶22} C.R., who was 11 years old at the time C.M. sustained his burns, apparently never spoke to any authorities who investigated the incident. C.R. testified at the hearing as a witness for Mother. She stated that she was home during the incident, playing cards in her bedroom, when Mother asked her to feed the dog. She testified that she went downstairs, fed the dog, then went outside with the dog for two to three minutes. When she came back inside, she went upstairs because she heard C.M. screaming. According to C.R.'s initial testimony, Mother was already in the bathroom when she came back inside. On cross-examination, however, C.R. testified that Mother was running up the stairs to help C.M. when she came back inside.

{¶23} Given the inconsistencies in the statements of Mother and the testimony of C.R., it was not unreasonable for the trial court to believe C.M., who consistently said that someone else

burned him and never once said that he was washing his owns hands and/or adjusted the hot or cold water and accidentally burned himself.

**Medical Experts**

Mother's Expert

{¶24}   By agreement of the parties, to accommodate the schedules of the witnesses, Mother's medical expert testified first.   Mother's medical expert did not examine C.M. but reviewed his medical records, including photographs of the child's injuries.  Mother's expert also reviewed a statement of Mother about the incident but did not review any statements made by the child.

{¶25}   Mother's expert testified that, if the cold water had been turned off and the hot water coming from the faucet was as hot as 140 degrees, C.M. could have sustained his burns in less than one second.  He ultimately opined that C.M. could have put his own hands under the water, palms down and fingers open, and that his burns were just as likely the result of an accident as an intentional burn injury.

CSB's Expert

{¶26}   CSB's expert, the pediatrician from Akron Children's Hospital, physically examined C.M. shortly after the incident.  He observed the burns in person and explained that his physical examination of C.M. allowed him to turn C.M.'s hands and examine the barriers of the burns that were not captured by the photos.  He also explained that the photographs were taken the day after he examined C.M. and did not depict some of the subtleties and borders of the burns that he could observe in person, even without moving the hands.

{¶27}   When asked whether the child could have sustained his burns from briefly holding his hands under extremely hot water, he responded that the burn pattern would have shown that

C.M. quickly withdrew his hands and he would not have burned such an extensive area from a brief exposure to the water. Moreover, the "well demarcated" burn lines at both wrists further supported his conclusion that the child's hands had been forcibly held under hot water "for an extended period of time" while the water ran off his hands at the wrists. He further explained that the absence of any burns on his palms or fingers demonstrated that C.M.'s hands had been held in a fisted position, palms down, which "is not a natural position for washing of hands." He concluded that C.M.'s injuries had been the result of the child's hands being forcibly held under hot running water, not an accidental injury.

{¶28} Mother also argues that the trial court should not have considered the testimony of CSB's medical expert because he did not testify to an adequate degree of medical certainty. Her stated assignments of error, however, assert only that the trial court's adjudication was not supported by the weight and/or sufficiency of the evidence at the hearing. As stated above, when reviewing a challenge to the manifest weight of the evidence, this Court reviews and weighs all the evidence that was admitted at the hearing. *See Eastley v. Volkman*, 2012-Ohio-2179, at ¶ 20. This Court's role in reviewing the sufficiency of evidence to support a judgment is also to review evidence admitted at the hearing. *See State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶29} In other words, Mother's challenges to the sufficiency and weight of the evidence do not encompass arguments about the admissibility of any evidence that was considered at the hearing. Mother should have raised this issue through a separate assignment of error. *See In re L.P.*, 9th Dist. Summit No. 27792, 2015-Ohio-4164, ¶ 22. Moreover, although Mother cross-examined the expert at trial, she did not challenge the admissibility of his testimony and cannot do so for the first time on appeal. *In re G.M.*, 9th Dist. Wayne Nos. 14AP0040 and 14AP0041, 2015-

Ohio-582, ¶ 26. Because Mother's argument about the trial court considering the testimony of CSB's medical expert is not properly before us on appeal, we do not reach the merits of the issue.

{¶30} Given the totality of the evidence before it, the trial court reasonably rejected Mother's defense and concluded that Mother had abused C.M. by burning his hands and that, as a result, Mother's two children were dependent because they lived in the same household. Mother has failed to demonstrate that the trial court's decision was not supported by the evidence presented at the adjudicatory hearing. Her assignments of error are overruled.

## III.

{¶31} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

11

Costs taxed to Appellant.

_____
JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, P. J.
CONCURS.

HENSAL, J.
DISSENTING.

{¶32} I would reverse the trial court's adjudication because I do not agree that CSB established, by clear and convincing evidence, that Mother abused C.M. In addition to uncertainty about the temperature of the water at the time C.M. sustained his burns, the investigation was intertwined with confusion about whether C.M.'s hands had been burned by immersing his hands in a sink full of hot water or by holding his hands under running water. The statements of C.M. were fairly vague and did not rule out Mother's statement that she had held the child's burned hands under cold water. Moreover, Mother consistently stated that she did not burn C.M.'s hands but that her only mistake was to leave him unattended at the sink in the bathroom. For these reasons, I respectfully dissent.

APPEARANCES:

WILLIAM T. WHITAKER and ANDREA L. WHITAKER, Attorneys at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

BRENDON KOHRS, Attorney at Law, for C.M.

AMBER CROWE, Guardian ad Litem.

SALLY A. PRENTICE, Guardian ad Litem.