[Cite as *In re L.T.*, 2023-Ohio-4109.]

STATE OF OHIO      )
)ss:
COUNTY OF SUMMIT    )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

IN RE: L.T.
     T.T. II
     B.T.
     A.T.

C.A. No.     30381

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN15-02-92
              DN15-02-93
              DN15-02-94
              DN15-02-95

DECISION AND JOURNAL ENTRY

Dated: November 15, 2023

---

STEVENSON, Judge.

{¶1} Appellant, M.T. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that denied her motion to modify her visitation time with her four minor children. This Court affirms.

I.

{¶2} Mother is the biological mother of L.T., born July 21, 2007; T.T., born June 22, 2010; B.T., born April 6, 2011; and A.T., born July 23, 2013. The children's father did not appeal from the trial court's judgment.

{¶3} This case began in January 2015, when Summit County Children Services Board ("CSB") filed complaints to allege that these children were abused, neglected, and dependent because of illegal drug use and domestic violence in the parents' home. The children were placed

in the emergency temporary custody of their paternal grandmother ("Grandmother") under an order of protective supervision by CSB.

{¶4} By agreement of the parties, the juvenile court later adjudicated the children dependent and dismissed the allegations of abuse and neglect. The parents also agreed to the children being placed in the temporary custody of Grandmother with an ongoing order of protective supervision by CSB. Ultimately, the guardian ad litem moved for the children to be placed in the legal custody of Grandmother and CSB supported that motion. Father alternatively moved for the children to be placed in his legal custody.

{¶5} Following an evidentiary hearing on the competing dispositional motions, the magistrate decided that the children should be placed in the legal custody of Grandmother. Shortly afterward, the juvenile court granted each parent separate visitation time with the children, to be supervised by an appropriate adult, because they had not complied with the domestic violence or substance abuse components of the case plan. Neither parent raised a timely challenge to the visitation order.

{¶6} The juvenile court later overruled the parents' objections to the magistrate's legal custody decision, placed the children in the legal custody of Grandmother, and terminated protective supervision. This Court affirmed the judgment on appeal. *In re L.T.*, 9th Dist. Summit Nos. 28788 and 28799, 2018-Ohio-1487, ¶ 1. Mother's problem with substance abuse continued and, six months later, she was convicted of offenses related to drug possession and driving under the influence of drugs.

{¶7} During the next several years, Mother and Father continually filed motions with the juvenile court regarding their residual parental rights and seeking to regain legal custody of the children. Of relevance here, Mother, Father, and Grandmother filed various motions that

eventually proceeded to a contested hearing during April 2022. At the hearing, the parties presented evidence on motions pertaining to a potential change of legal custody, both parents' requests for expanded visitation and access to the children's school and medical records, and Grandmother's motion to terminate or modify visitation.

{¶8} The hearing was held before a visiting judge, who considered the seven-year record in this case as well as the evidence presented at the hearing. Each of the parties and the most recent guardian ad litem testified at the hearing. The parties also introduced exhibits, which included numerous audio and video recordings that the older children had secretly made in Grandmother's home at the request of Mother.

{¶9} The court later issued a comprehensive, 13-page judgment entry that ruled on the various motions that were pending in this case. The trial court concluded that the parents had failed to demonstrate the requisite change in circumstances that could justify a change in legal custody. *See* R.C. 2151.42(B). Moreover, the court emphasized that Grandmother had been meeting all the children's needs while Mother had continually attempted to undermine Grandmother's role as legal custodian in a manner that had been emotionally damaging to the children, particularly L.T. The court retained the children in Grandmother's legal custody, denied the parents' access to the children's medical and school records, and issued new visitation orders pertaining to each parent. Mother appeals and raises one assignment of error.

I.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED WHEN IT DENIED MOTHER'S MOTION TO MODIFY VISITATION[.]

{¶10} On appeal, Mother challenges only one aspect of the trial court's judgment: its denial of her request "to visit the children for more than 8 hours every other weekend and have

unsupervised visits in father[']s home, mother[']s home, and in public places[.]" The court denied Mother increased and/or unsupervised visitation time with the children. In fact, the trial court placed new restrictions on Mother's visitation time with L.T. and A.T., partially granting Grandmother's motion to terminate or restrict Mother's visitation with the children.

{¶11} Although Mother maintained a relatively positive relationship with T.T. and B.T., Mother does not directly challenge the trial court's findings that there were problems in her relationships with L.T. and A.T. Mother also admitted during her testimony that L.T. did not want to see her. One year earlier, L.T. had attempted suicide and blamed her emotional problems on Mother and Father. Because L.T. had not spoken to Mother for over a year and did not want to see her, the trial court terminated Mother's visitation with her at that time.

{¶12} A.T. had expressed apprehension about seeing Mother, although the source of her discomfort had not yet been determined through her counseling. One of the other siblings had reported to his counselor that Mother inappropriately touched A.T. in a sexual manner, but A.T. denied that anything happened when the allegations were investigated in Trumbull County, where the children reside with Grandmother. Because A.T. was apprehensive about seeing Mother, however, the trial court modified her visitation order so that she was not required to visit if she did not want to.

{¶13} Before reviewing Mother's assigned error, this Court notes that Mother's brief alludes to issues that do not fall within her assignment of error. This Court focuses its review on Mother's stated assignment of error and supporting arguments, not on other matters that are not related to her visitation rights. *See* App.R. 16(A)(7); *In re C.R.*, 9th Dist. Summit No. 29608, 2020-Ohio-4676, ¶ 28-29. "This Court reviews a juvenile court order awarding parental visitation for an abuse of discretion." *In re M.B.*, 9th Dist. Summit No. 30383, 2023-Ohio-1804, ¶ 34. An

abuse of discretion requires that the trial court's judgment be "unreasonable, arbitrary, or unconscionable." *Id.*, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶14} "A parent who has lost legal custody of a child, but whose parental rights have not been terminated, retains residual parental rights, including the 'privilege of reasonable visitation.'" *In re K.D.*, 9th Dist. Summit No. 28459, 2017-Ohio-4161, ¶ 27, quoting R.C. 2151.353(A)(3)(c) and former R.C. 2151.011(B)(48). The "privilege of reasonable visitation" does not guarantee that a parent will be able to visit with her child. What is "reasonable" visitation will depend on the particular facts of the case and is an issue to be determined by the juvenile court. *See In re M.B.*, 9th Dist. Lorain Nos. 11CA010060 and 11CA010062, 2012-Ohio-5428, ¶ 34.

{¶15} Pursuant to R.C. 2151.359(A)(1)(a), the trial court has the authority to "'[c]ontrol any [parental] conduct or relationship that will be detrimental or harmful to the child[,]' which includes the authority to limit or even prohibit parental visitation with a child placed in the legal custody of another adult." *In re M.B.*, 2023-Ohio-1804, at ¶ 36. In determining the appropriate visitation for a parent who has lost legal custody of her children, the trial court must consider the totality of circumstances affecting the best interest of the child. *In re K.D.*, 2017-Ohio-4161, at ¶ 27.

{¶16} Mother does not challenge any specific aspect of the trial court's visitation order. Instead, she asserts that, when the court considered the totality of the circumstances in this case, it erred by: 1) considering her history of parenting problems without considering evidence that she had remedied those problems; 2) disregarding the recommendation of the guardian ad litem; 3) finding Grandmother to be a more credible witness than Mother, and 4) failing to consider evidence that Grandmother had alienated the children from Mother. This Court will address each argument in turn.

## Mother's Parenting History

{¶17}  Mother begins by asserting that the trial court erred by considering her past problems with drug abuse, without considering evidence that she has resolved those problems. The record reveals, however, that the trial court fully considered this evidence, but found that Mother had not demonstrated that she had maintained sobriety.  Mother's parenting history was directly relevant to the trial court's best interest determination, as it pertained to Mother's relationship with the children and their custodial history.  *See* R.C. 2151.414(D)(1); R.C. 3109.04(F)(1).

{¶18}  Mother's lengthy history of drug abuse was the primary reason that the children had lived outside Mother's custody for seven years and why her interaction with them had been restricted to supervised visitation.  The children were removed from Mother's custody in 2015 and placed temporarily with Grandmother.  The children were later placed in Grandmother's full legal custody because Mother failed to resolve her drug abuse and other parenting problems after two years of case planning services.  The trial court had imposed restrictions on her visitation during the 2015 case, requiring that a suitable adult supervise her visits because she had not demonstrated a sustained period of sobriety or that she had resolved her other parenting problems.

{¶19}  Another year after the trial court closed the 2015 case, Mother continued to struggle with drug problems.  She was convicted of aggravated drug trafficking and operating a motor vehicle under the influence of alcohol or drugs.  She was placed on community control for two years and was required to submit to random drug screens during that period.  Mother testified that she tested negative throughout her period of community control, but she did not introduce results of those drug screens into evidence.

{¶20} The guardian ad litem testified that he had seen some of Mother's drug test results from that time, but not all of them. Moreover, Mother's period of community control ended approximately 18 months before the hearing. The guardian ad litem admitted that he had not seen any recent drug screens from Mother. Although Mother testified that she had been sober for the past several years, the trial court did not believe her uncorroborated testimony. Mother has failed to demonstrate that the trial court abused its discretion by considering her drug abuse history or by concluding that she had failed to demonstrate that she had resolved that problem.

**Guardian Ad Litem Recommendation**

{¶21} Mother also asserts that the trial court erred by disregarding the recommendations of the guardian ad litem. To begin with, despite Mother's suggestion to the contrary, the guardian ad litem did not recommend that Mother have expanded and/or unsupervised visitation time with all four of her children. The guardian ad litem made that recommendation only for T.T. and B.T.

{¶22} In its judgment entry, the trial court explained why it "discounted" that recommendation. The trial judge emphasized that, although the current guardian ad litem had been assigned to this case for approximately two years, he had observed only one visit in Mother's home six months before the hearing, observed Mother and Father interact only once, made no unannounced visits to their home, and lacked information about their criminal and drug history.

{¶23} Moreover, Mother's brief exaggerates the positive nature of the report and testimony of the guardian ad litem. The written report of the guardian ad litem recommended that Mother have unsupervised visitation with T.T. and B.T., but he weakened his recommendation when he testified by repeatedly using double negative statements. A summary of his testimony is essentially that he did *not* see any reason why Mother should *not* have unsupervised visitation with T.T. and A.T. because he had *no* reason to believe that she was still using drugs and the allegations

about Mother inappropriately touching A.T. had *not* been substantiated. The testimony of the guardian ad litem concluded with, "I can't pinpoint something to say that mom can't be alone at least with the boys."

{¶24} In other words, in addition to his limited observation of Mother's parenting ability, the guardian ad litem did not offer an unequivocal opinion that it would be in the best interest of T.T. and B.T. to have expanded or unsupervised visits with Mother. Mother has failed to demonstrate that the trial court acted arbitrarily in discounting the recommendation of the guardian ad litem.

### Credibility Determinations

{¶25} Next, Mother asserts that the trial court erred by believing the testimony of Grandmother instead of Mother. The trial judge, as trier of fact, had the opportunity to observe the demeanor of the witnesses and was in the best position to assess their credibility. *State v. Adkins*, 9th Dist. Wayne No. 22AP0022, 2023-Ohio-3000, ¶ 28.

{¶26} In its judgment entry, the trial court included a detailed assessment of the credibility of the witnesses, including Mother and Grandmother. Following a one-page explanation of his reasoning, the judge concluded that he "disbelieved almost everything the parents[] said that was not verified by the [guardian ad litem], the Legal Custodian or reference to the court file." He emphasized the parents' "evasive" testimony and opined that it "lacked candor" and was "improbable, inconsistent, and not worthy of belief."

{¶27} On the other hand, the trial judge found Grandmother's testimony "to be truthful based on her accurate memory and the logical answers" that she gave to questions both on direct and cross-examination. He also emphasized that Grandmother was "patient" and "forthcoming"

when she testified and "maintained her composure" even while testifying about the traumatic experience of discovering L.T. unconscious after the child had attempted suicide.

{¶28}  The trial court gave detailed and reasonable explanations to support his conclusion that Grandmother was a more credible witness than Mother.  Mother has failed to demonstrate any error by the trial court in believing the testimony of Grandmother instead of Mother.

### Alleged Alienation by Grandmother

{¶29}  As explained above, the trial court disbelieved most of Mother's testimony.  That testimony included claims that Grandmother had made efforts to alienate the children from her. The trial court instead found that Mother had made significant efforts to alienate the children from Grandmother, by making false allegations that Grandmother mistreated them and by requiring the children to secretly record Grandmother.

{¶30}  Nevertheless, Mother's alienation argument on appeal points to undisputed evidence that, according to her, demonstrates efforts by Grandmother to alienate the children from her.  She specifically faults Grandmother for failing to immediately inform her after L.T. attempted suicide and for continuing to believe unsubstantiated allegations that Mother had sexually touched the youngest child, A.T.

{¶31}  Grandmother did not immediately notify Mother about L.T.'s suicide attempt, but there was no evidence to support Mother's suggestion that the delayed communication was an attempt to alienate her from L.T.  The evidence revealed that Grandmother was primarily concerned about seeking hospitalization and medical treatment for L.T., who was unconscious when Grandmother found her.  Grandmother also did not directly communicate with Mother because they had a strained relationship and did not speak to each other.  Moreover, L.T. also had a poor relationship with Mother, blamed her for the suicide attempt, and did not want to see her.

Mother was informed by someone else about L.T.'s suicide attempt within a reasonable time and there was no evidence before the court that Grandmother had attempted to impede the communication of that information to Mother.

{¶32} The allegations that Mother had sexually touched A.T. came to light after her older brother, B.T., made disclosures that he had witnessed the incident to his counselor, a mandatory reporter. Although an abuse investigation in Trumbull County did not substantiate B.T.'s allegations because A.T. denied that the touching occurred, the allegations were never disproven. The evidence was also clear that, for some reason, A.T. was apprehensive about visiting Mother and was sometimes uncomfortable around her. Even the guardian ad litem testified that A.T. was uncomfortable around Mother and should not be forced to visit her if she is apprehensive.

{¶33} Despite Mother's suggestions to the contrary, there was no evidence presented at the hearing that Grandmother chose to believe false allegations about Mother improperly touching A.T. Because B.T.'s allegations about witnessing Mother inappropriately touching A.T. had not been disproven, Grandmother had chosen to err on the side of believing and protecting the children. Mother's arguments about Grandmother attempting to alienate the children are not supported by the record.

{¶34} Mother has failed to demonstrate that the trial court acted unreasonably or arbitrarily by maintaining or imposing restrictions on her visitation with her children. Mother's assignment of error is overruled.

### III.

{¶35} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT


SUTTON, P. J.
CARR, J.
CONCUR.


APPEARANCES:

WESLEY C. BUCHANAN, Attorney at Law, for Appellant.

EDDIE SIPPLEN, Attorney at Law, for Appellee.

NOWAR KATIRJI, Guardian ad Litem.