[Cite as *In re K.D.*, 2017-Ohio-4161.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: K.D.
     N.D.

C.A. No.     28459

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 16-02-077
                  DN 16-02-078

DECISION AND JOURNAL ENTRY

Dated: June 7, 2017

CARR, Judge.

{¶1} Appellant D.D. ("Mother") appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that awarded legal custody of her children to their father ("Father"). This Court affirms in part, reverses in part, and remands.

I.

{¶2} Mother and Father are the parents of K.D. (d.o.b. 4/8/09) and N.D. (d.o.b. 3/14/11). The parents are divorced and have an historically hostile relationship. The children were removed by police from Mother's care based on allegations that Mother was exhibiting erratic behavior and mental health issues; and that she and her cousin who was living with her were abusing drugs, using excessive discipline on the children, and getting into physical altercations with one another. Summit County Children Services Board ("CSB") filed a complaint alleging the children to be dependent and neglected. At adjudication, Mother and Father waived a hearing and agreed that the children were dependent and neglected. The

magistrate issued a decision adjudicating them as such, and the juvenile court adopted the decision the same day. After the subsequent dispositional hearing, the children were placed in the temporary custody of CSB, and the juvenile court adopted the agency's case plan for the family.

{¶3} Both Father and CSB filed motions for legal custody to Father. The magistrate held a dispositional hearing over the course of two days, continuing the matter after the first day to allow Mother to subpoena additional witnesses. At the conclusion of the hearing, the magistrate issued an order awarding legal custody to Father and granting Mother regular phone contact and visitation as the parties may agree. In the event that the parties could not agree, Mother was entitled to visitation every other weekend upon her successful completion of substance abuse treatment and mental health counseling, and her demonstration of sobriety. Mother filed timely objections to the magistrate's decision.

{¶4} After hearing argument by counsel, the juvenile court overruled Mother's objections as they related to the award of legal custody to Father and the denial of Mother's motion to continue the hearing. The court sustained her objection regarding the issue of visitation, however. In addition to regular phone contact, the juvenile court ordered that Mother shall have regular supervised visitation as the parties may agree. If the parties could not agree, then Mother was "permitted to receive at least one hour of visitation to occur at a neutral site, to be supervised by an appropriate adult besides Father." The order did not clarify the frequency in which Mother was to have one hour of visitation. Nor did it define the terms "neutral site" and "appropriate adult." Mother filed a timely appeal in which she raises two assignments of error for review. We rearrange the assignments of error to facilitate discussion.

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT'S FINDING THAT LEGAL CUSTODY TO FATHER WAS IN THE BEST INTEREST OF THE CHILDREN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

**{¶5}** Mother argues that the juvenile court's finding that an award of legal custody to Father was in the best interest of the children was against the manifest weight of the evidence. This Court disagrees.

**{¶6}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶7}** "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, citing *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. In that regard, the juvenile court is guided by the best interest factors enunciated in R.C.

2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 9th Dist. Summit Nos. 26976, 26977, 2014-Ohio-2748, ¶ 16. In addition, the juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850, 15CA010860, 2017-Ohio-1, ¶ 17. While some factors overlap with those above, others include the child's adjustment to her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶8} K.D. and N.D. are now eight and six years old, respectively. They have lived with both parents together and apart, as well as with their paternal grandparents during the pendency of this case. They have experienced instability due to multiple relocations by Mother, as well as civil protection orders obtained by Mother against Father, which have impacted their ability to see Father. Shortly before CSB filed its complaint in this case, Mother obtained a civil protection order against Father, which named both Mother and the children as protected persons. Mother admitted that she pursued that protection order, because she believed that Father had made false accusations against her about her drug use and abuse of the children. Although Mother obtained an ex parte civil protection order, it was terminated and her petition was

dismissed after a full hearing on the matter.[1]  Because the children were no longer protected under the terms of a civil protection order, CSB was able to facilitate visitation between them and Father.

{¶9}    By all accounts, the children enjoy a close relationship with Father, his live-in fiancée, and her children.  The fiancée has no criminal history, and is available and willing to provide child care for the children when they are not in school and Father is at work.  Mother has a boyfriend, who is on probation and has a history of drug abuse.  According to the boyfriend's mother, Mother and her boyfriend recently moved in together.  Although Mother's boyfriend has had contact with the children, there was scant evidence regarding the children's relationship and interactions with him.

{¶10}  Both parents have had the opportunity for weekly visitation with the children. Father has consistently exercised his visitation.  The visits have gone very well, and the agency allowed Father to have the children overnight on occasion.  Mother only sporadically appeared for visitation in the beginning, and this caused the children to become "weary" of her inconsistency.  The children were more excited to see Mother when she became more consistent in showing up for scheduled visitations.  Both children have expressed to the guardian ad litem their desire to live with Father and visit with Mother.

{¶11}  The children were removed from Mother's care due to concerns for her mental health, substance abuse, and instability.  Her case plan objectives addressed those concerns.  The case worker testified that Mother was effectively non-compliant with her case plan objectives.

---

[1] Another civil protection order Mother obtained, naming only her as a protected party, expired in October 2016.

**{¶12}** Mother's primary case plan objective was to address her issues with substance abuse by submitting to an assessment and following all treatment recommendations. Mother was assessed through the STARS program and diagnosed with opiate and marijuana use. It was recommended that she participate in intensive outpatient treatment, or, if that proved unsuccessful, inpatient treatment. By the time of the dispositional hearing, Mother had not engaged in any services, although both she and her case manager at a mental health facility testified that she had been referred and was planning to start intensive outpatient substance abuse treatment in an addictions program in Medina. The program was expected to last up to six months, and required 4-8 hours participation per day, 3-5 days per week. It was not clear how Mother would get to Medina from Akron for treatment, although her case manager testified that she would bring her, if necessary. At the hearing on Mother's objections (at which Mother did not appear), both the guardian ad litem and CSB case worker provided the juvenile court with updates. Both believed that Mother was not engaged in any treatment program.

**{¶13}** In addition to participation in substance abuse treatment, Mother was also required to submit to random drug screens. Although Mother was adamant that she had never received any calls from the agency to drop a urine specimen for drug analysis, she testified that she nevertheless provided urine specimens 7-8 times since March 2016, at Oriana House. She clarified that she accompanied her boyfriend when he had to go there weekly while on probation, and she checked in for drug screens to be submitted to CSB. The case worker verified during a court recess that Oriana House had never submitted reports to the agency regarding any drug screens for Mother, although it had submitted weekly reports regarding Father, who was also required to submit to random drug screens. Despite weekly requests for drug screens since

February 2016, Mother never complied. In fact, the case worker testified that although Mother appeared twice the previous week, she refused both times to provide a urine sample for analysis.

{¶14} Mother testified that she never had a substance abuse problem until her children were removed from her care. She admitted to using heroin in the past. She further admitted that her last urine screen at her mental health facility tested positive for marijuana. Finally, she admitted that, when she was arrested and taken to a hospital psychiatric ward approximately five weeks before the hearing, she tested positive for opiates. Even though the drug screen also indicated that Mother was positive for amphetamines, Mother interjected that that was a lie.

{¶15} Given Mother's repeated failures to submit to random drug screens requested by the agency, her positive drug screens in other contexts, and her failure to engage in any substance abuse treatment, the case worker testified that Mother had not complied at all with her case plan objective relating to substance abuse.

{¶16} Mother's second case plan objective required her to submit to a mental health assessment and follow through on all recommendations. Mother began engaging in some services at Charak Center for Health and Wellness in June 2016. The case worker had not received Charak's assessment of Mother, so he was unsure whether she had completed one. Mother's case manager at Charak testified that a counselor assessed Mother but that, as her case manager, she did not have authority to view Mother's assessment. She testified, however, that Mother had been diagnosed with bipolar disorder, cannabis abuse, and opiate abuse. Mother asserted that she takes five medications for bipolar disorder, depression, and anxiety. She had had two mental health counseling sessions prior to the dispositional hearing, but Charak reported that Mother had not been compliant with her medications for six months before reengaging services in June. For the first four months of this case, Mother participated in no mental health

treatment. Moreover, once she began treatment, she often refused to submit to drug screens required before the center would prescribe her medication.

{¶17} Mother was further required to participate in anger management and parenting classes. The caseworker testified that he provided Mother with a list of agencies capable of providing her with services. Although Mother ultimately contacted Greenleaf for services, she had not engaged in either anger management or parenting classes by the date of the hearing. Moreover, throughout the case, Mother informed the caseworker that she was participating in various services. When the caseworker called the various agencies to confirm, he was always informed that Mother was not in fact a client.

{¶18} Mother exhibited some concerning behaviors during the hearing. She frequently interrupted the proceedings by interjecting her commentary about the witnesses' testimony. She repeatedly exclaimed that witnesses were lying, that the situation was not fair, that she was going to pursue legal action in other courts to get her children returned, and that she could not stand listening to the testimony any longer. On multiple occasions, Mother walked out of the courtroom after ranting, cursing, or making threats and accusations. At one point, Mother clearly became overwhelmed by the situation and succumbed to a defeatist attitude and exclaimed, "Let [Father] have the kids. I'm out of here. I'm done. Let him have them." On another occasion, Mother blurted out that she is pregnant, but that that was nobody's business.

{¶19} Finally, Mother's case plan objectives required her to obtain appropriate housing. She obtained a three-bedroom AMHA apartment that contained appropriate bedroom furniture for the children. Two weeks prior to the hearing, however, a friend of Mother's boyfriend suffered a drug overdose in Mother's apartment, leaving the viability of maintaining that housing in question.

{¶20} In conclusion, the caseworker testified that Mother had failed to comply with her case plan objectives to the extent that he had significant concerns regarding her mental health, substance abuse issues, and ability to manage her anger and maintain her housing. He opined that Mother was not in a position to provide for the basic needs of the children. On the other hand, the caseworker testified that, not only was Father fully compliant with his case plan objectives, he had exceeded expectations and obligations.

{¶21} Father obtained substance abuse and anger management assessments, as required. The assessments indicated that there was no need for treatment in those areas. Although Father was not required to submit to a mental health assessment, he obtained one on his own initiative. That assessment, too, indicated no need for treatment. Father complied with every request to submit a urine sample for drug analysis, and all his drug screens were negative. Father successfully completed his required parenting classes. In addition, Father is employed full time and is financially able to provide for the children's basic needs. He and his fiancée share a three-bedroom AMHA apartment that is furnished and otherwise appropriate for the children.

{¶22} The case plan objective for the children required trauma screens, which indicated a need for counseling. Based on that recommendation, Father had already begun the process of setting up counseling for them.

{¶23} The caseworker and guardian ad litem both testified that an award of legal custody to Father is in the best interest of the children. After multiple disruptions during the course of their short lives, the children are in need of permanence; and Father has demonstrated his ability and willingness to provide the safety and stability the children require. While not dispositive of the issue, case plan compliance is relevant to the best interest determination. *See In re T.W.*, 9th Dist. Summit No. 27477, 2016-Ohio-92, ¶ 17. Both the caseworker and guardian

ad litem emphasized that Father had fully complied with all case plan objectives, while Mother had either not engaged in necessary services at all or had only recently made an effort to engage.

{¶24} Based on a review of the evidence, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice in awarding legal custody of the children to Father. The critical inquiry before awarding legal custody is to consider the current parenting abilities of each potential custodian and to determine whether it is in the best interest of the child to be placed in the legal custody of any of them. *See In re K.C.*, 9th Dist. Summit Nos. 26992, 26993, 2014-Ohio-372, ¶ 20. The evidence in this case established that K.D. and N.D. had experienced trauma and instability during their lives, due in significant part to Mother's mental health, substance abuse, and anger issues. Despite the efforts by CSB to provide her with assistance to facilitate her engagement in necessary services, Mother failed to comply with any case plan objectives, and only sought mental health counseling mere weeks before the dispositional hearing. On the other hand, Father complied with all objectives and demonstrated that he was willing and able to provide a safe and stable environment for the children. Under the circumstances, the juvenile court's finding that an award of legal custody to Father was in the children's best interest was not against the manifest weight of the evidence. Mother's second assignment of error is overruled.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING MOTHER MINIMAL SUPERVISED VISITATION WITH THE CHILD[REN.]

{¶25} Mother argues that the juvenile court abused its discretion in regard to its visitation order. This Court agrees.

{¶26} Unless the juvenile court has abused its discretion, this Court will uphold an order of visitation. *See In re G.S.*, 9th Dist. Summit No. 28050, 2016-Ohio-7471, ¶ 32. An abuse of

discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶27} A parent who has lost legal custody of a child, but whose parental rights have not been terminated, retains residual parental rights, including the "privilege of reasonable visitation." R.C. 2151.353(A)(3)(c); R.C. 2151.011(B)(48). In ordering visitation, the juvenile court must consider the "totality of the circumstances as they relate to the child's best interest." *See In re M.E.*, 10th Dist. Franklin No. 12AP-684, 2013-Ohio-2562, ¶ 25, quoting *In re C.J.*, 4th Dist. Vinton No. 10CA681, 2011-Ohio-3366, ¶ 15. It is generally understood that it is in a child's best interest to have companionship with both parents. *See Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997) (noting that one parent's exclusion of the other from the child's life materially affects the child's best interest).

{¶28} In this case, there was a glut of evidence demonstrating the long term hostility between Mother and Father. Moreover, the evidence indicated no reason to believe that their hostility was likely to abate. Mother argues that the visitation order is unworkable, because it requires Mother and Father to agree regarding the terms. This Court agrees that ordering visitation that is dependent on these hostile parties' agreement severely limits Mother's opportunity for companionship with the children. No party argued below that the best interest of the children required such a restriction on Mother's visitation. As requiring the parties to agree to the terms of the time, location, frequency, and duration of visitation effectively allows Father to veto Mother's efforts to see the children, such an order is unreasonable and not in the best interest of the children.

{¶29}   The juvenile court purported to provide for the likely contingency that Mother and Father would not be able to reach any agreements regarding visitation.  The contingency reads:

> If the parties are unable to agree, Mother shall be permitted to receive at least one hour of visitation to occur at a neutral site, to be supervised by an appropriate adult besides Father.

{¶30}   The order, as it stands, however, is too vague to offer Mother any certainty with regard to enjoying her statutory privilege of reasonable visitation.  The order does not note the frequency in which Mother may receive at least one hour of visitation.  Because the parties may disagree as to whether Mother may visit with the children one hour each day, one hour each week, one hour each month, etc., the order is unreasonable to effect the purpose of a visitation order.  The vagueness of the order is further compounded by the inclusion of the undefined terms "neutral site" and "appropriate adult."   Under the particular facts of this case, given the deep hostility of the parents towards one another, in the absence of any additional parameters clarifying Mother's opportunity for visitation, the order as written is unreasonable to accord Mother any visitation with the children.[2]  Mother's first assignment of error is sustained.

## III.

{¶31}   Mother's first assignment of error is sustained.  The second assignment of error is overruled.  The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with the opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

---

[2] This Court does not hold that visitation orders referencing neutral locations and appropriate persons will always be too vague to accord a party her right to enjoy visitation with a child.  We merely conclude that under some particular circumstances, like those in this case, such phrases will be insufficient to effectuate any practical opportunity for visitation.

—

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

---

DONNA J. CARR
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.