[Cite as *In re S.L.*, 2024-Ohio-117.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

IN RE: S.L.

C.A. No.     23AP0007

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     2018 JUV-G 001336

DECISION AND JOURNAL ENTRY

Dated: January 16, 2024

STEVENSON, Judge.

{¶1}    Appellant, St. L. ("Father"), appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that partially denied his motion to reduce or terminate his child's companionship time with her maternal grandparents ("Grandparents"). This Court affirms.

I.

{¶2}    Father is the biological father of S.L., born May 7, 2013. Father was never married to the child's mother ("Mother"), but he signed the child's birth record to acknowledge his paternity. During the next several years, Mother gave birth to two more children, who were not Father's children. Until this case began, S.L. resided with Mother and her siblings, often in the home of Grandparents.

{¶3}    On December 18, 2018, Father filed a complaint to commence this case in the juvenile court in Wayne County, where S.L. resided with Mother. His complaint sought an order

establishing a parent-child relationship with S.L., as well as a shared parenting plan with Mother to allocate their parental rights and responsibilities.

{¶4} On July 24, 2019, the juvenile court adopted the parents' shared parenting agreement that determined their parental rights and responsibilities regarding S.L. Pursuant to the agreement, Mother was designated the residential parent for school purposes only and both parents shared custody of the child. The shared parenting plan filed in this case also included the following provision:

## DEATH OF PARENT

Should one parent die, the surviving parent shall assume full custody, care and control of the minor child. Upon the death of either parent, the surviving parent, in good faith, will do all reasonably necessary to respect and ensure the continued visitation and communication between the child and the deceased parent's family.

{¶5} Less than one year later, because Father had become concerned that Mother was abusing illegal drugs, he filed numerous motions in this case, seeking court-ordered drug testing of both parents, the appointment of a guardian ad litem, and an order designating him as the sole custodial parent of S.L. Following an evidentiary hearing, Father was awarded temporary custody of S.L.

{¶6} On December 8, 2020, Grandparents filed a motion to establish a court-ordered visitation or companionship time schedule with S.L. They asserted that, since Father received temporary custody of S.L., he had not been allowing them to see their grandchild. The trial court scheduled a motion hearing to be held on January 12, 2021.

{¶7} Prior to the scheduled hearing, Mother died in a motor vehicle accident and Father became the child's sole parent. Shortly afterward, Grandparents filed a modified motion for companionship time in this case, adding that Mother was deceased and that they had become the

custodians of S.L.'s two younger siblings, who had lived with S.L. for most of their young lives. Grandparents sought the court's standard order of companionship time with S.L.

{¶8} The guardian ad litem met with Father, Grandparents, and S.L. to evaluate whether companionship time was in the child's best interest. The guardian ad litem emphasized to the court that S.L. was closely bonded with Grandparents. S.L. and Mother had lived with Grandparents for significant portions of S.L.'s life and, even when S.L. was not living with Grandparents, they had frequently visited and/or provided primary care for her.

{¶9} Although Father had told the guardian ad litem that S.L. was apprehensive about visiting Grandparents' home, the guardian ad litem noted that he "must be open to the possibility that the child has been coached and/or is trying to appease or not upset her father." The guardian ad litem emphasized in his report that, during his conversations with S.L., the child seemed to be comfortable and enthusiastic when she spoke about Grandparents and her maternal relatives. S.L. reported that she loved spending time with Grandparents, her siblings, and other maternal relatives, and that she looked forward to returning to Grandparents' home for overnight visits. The guardian ad litem did not sense that the child was uncomfortable about returning to Grandparents' home. Consequently, he recommended that S.L. be permitted to have some afternoon and overnight visits with maternal relatives in Grandparents' home.

{¶10} Despite Father's expressed concerns, he later agreed to a court-ordered plan that Grandparents would have companionship time with S.L. every other weekend and one day during the week. The magistrate journalized a new parenting plan in which Father was designated the child's residential parent and Grandparents were granted a standard order of companionship time. The trial court adopted the magistrate's decision on June 11, 2021, and no one filed any objections or appealed that judgment.

{¶11} Shortly afterward, however, Father began creating scheduling conflicts for the child and otherwise denying Grandparents their scheduled time with S.L. Eventually, Father stopped all companionship time, so the parties filed respective motions concerning Grandparents' companionship time. Father filed a MOTION TO MODIFY PARENTING PLAN, seeking to modify Grandparents' companionship time schedule, based on his concerns about the well-being of S.L. while in Grandparents' care. He specifically alleged that S.L. had been subjected to "verbal abuse and safety concerns" in the home of Grandparents, including physical abuse and resulting mental health symptoms. Father later filed a motion to dismiss the original order that granted companionship time to Grandparents, asserting that the juvenile court never had subject matter jurisdiction to grant them companionship time.

{¶12} Grandparents alternatively filed a motion to enforce their companionship time, alleging that Father had been denying them time with S.L. Although Father and Grandparents also filed motions to hold the other in contempt for their failure to abide by specific aspects of their companionship time agreement, the contempt issue will not be reviewed because it has not been raised on appeal.

{¶13} A hearing was later held before a magistrate, at which the parties presented several exhibits and the testimony of Father, Grandmother, and the most recent guardian ad litem. The magistrate later issued a decision to partially grant Father's motion to modify Grandparents' companionship time. The modification removed Grandparents' weekday visit and reduced the amount of time that Grandparents could take the child out of town on vacation. The decision also held Father in contempt for his past failures to honor Grandparents' companionship time rights. The trial court adopted the magistrate's decision.

{¶14} Father filed timely objections, which included challenges to the trial court's subject matter jurisdiction and its decision not to further reduce or terminate Grandparents' companionship time with S.L. The trial court later overruled Father's objections and granted Grandparents reduced companionship time with S.L. as set forth in its prior order. Father appeals and raises three assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT IT HAD SUBJECT MATTER JURISDICTION OVER THE GRANDPARENT VISITATION ACTION TO ISSUE JUDGMENT ENTRIES AND ORDERS IN THE WAYNE COUNTY JUVENILE COURT.

{¶15} Father's first assignment of error is that the Wayne County Juvenile Court lacked subject matter jurisdiction to grant Grandparents companionship time with S.L. The issue of a trial court's subject matter jurisdiction involves a question of law that this Court reviews de novo. *In re R.G.*, 9th Dist. Wayne No. 20AP0012, 2021-Ohio-93, ¶ 13.

{¶16} This Court has frequently recognized that "[t]he subject matter jurisdiction of Ohio's juvenile courts is defined in R.C. 2151.23." *Stalnaker v. Stalnaker*, 9th Dist. Summit No. 30367, 2023-Ohio-3046, ¶ 11, citing *State ex rel. Richland County Children Services v. Richland County Court of Common Pleas*, 152 Ohio St.3d 421, 2017-Ohio-9160, ¶ 11, and *In re M.R.L.*, 9th Dist. Summit No. 25618, 2011-Ohio-4997, ¶ 9. In the trial court, the parties focused their arguments on whether the juvenile court had jurisdiction to hear this matter, including Father's complaint, pursuant to R.C. 2151.23(A)(2). R.C. 2151.23(A)(2) provides that the juvenile court, except in a few specified counties other than Wayne, has exclusive original jurisdiction "to determine the custody of any child not a ward of another court of this state[.]"

{¶17} Father is the only party who filed a brief in this appeal, and he again argues that the issue of Grandparents' companionship time did not fall within the juvenile court's jurisdiction under R.C. 2151.23(A) because Grandparents sought only companionship time, not custody of the child. He focuses most of his argument on cases that have held that an action filed by a non-parent for visitation or companionship time with a child is not an action for "custody" of the child under R.C. 2151.23(A)(2). *See In re R.G.,* 2021-Ohio-93; *In re C.W.*, 9th Dist. Lorain Nos. 16CA011044, 17CA0011162, and 17CA011165, 2018-Ohio-5265; *Parker v. Jones*, 4th Dist. Ross No. 14CA3421, 2014-Ohio-3862; *In re Gibson*, 61 Ohio St.3d 168 (1991); *see also Rowell v. Smith*, 133 Ohio St.3d 288; 2012-Ohio-4313.

{¶18} To begin with, the cases cited by Father are legally distinguishable from this case because they all involved actions commenced in juvenile courts by non-parents seeking to obtain companionship time with a child. Notably, the parents in those cases were not already involved in custody litigation in that court. In this case, it is legally significant that Grandparents filed a motion for companionship time in an ongoing case filed in the juvenile court by Father.

{¶19} In addition to the distinguishing fact that Grandparents sought and established their companionship rights in this case as a collateral matter in the pending litigation between Father and Mother, Father unnecessarily focuses his argument on whether this matter fell within the juvenile court's "exclusive" original jurisdiction under R.C. 2151.23(A). Although Father argues that only the domestic relations division had jurisdiction to establish Grandparents' companionship time with S.L., he fails to cite any legal authority, and this Court is unaware of any, that required this matter to be heard by the domestic relations division of the Wayne County Court of Common Pleas. Unlike the domestic relations divisions in the other counties within this Court's appellate district, the jurisdiction of the domestic relations divisions in Wayne County is not separately

defined. *Compare* R.C. 2301.03(C), (I), and (U) (defining the jurisdiction of the domestic relations divisions in Lorain, Summit, and Medina Counties). *See also* R.C. 2151.23(A)(2) and (11) and R.C. 2151.23(B), (D), and (E) (limiting the jurisdiction of the juvenile division in Summit County to hear child custody and related matters).

{¶20} Moreover, even if the issue of Grandparents' companionship time *could* have been heard by the domestic relations or another division of the Wayne County Court of Common Pleas, none of the parties attempted to invoke the jurisdiction of another court. Therefore, it is not necessary for this Court to determine that the juvenile division had "exclusive" original jurisdiction over the issue of Grandparents' companionship time with S.L., but only that it had original subject matter jurisdiction.

{¶21} Father does not dispute that the trial court had subject matter jurisdiction to determine his parental rights and responsibilities in this case. Although he suggests that the court had exclusive jurisdiction under the "custody" language set forth in R.C. 2151.23(A)(2), for purposes of the issue raised on appeal, this Court will examine the trial court's subject matter jurisdiction under a different subsection of R.C. 2151.23. Following the definition of the juvenile court's "exclusive" original jurisdiction set forth in the 18 subsections of R.C. 2151.23(A), R.C. 2151.23(B) sets forth several circumstances in which the Wayne County Juvenile Court has original (but not exclusive) jurisdiction.

{¶22} Specifically relevant here, R.C. 2151.23(B)(2) provides that, "[e]xcept as provided in [jurisdictional provisions not applicable to Wayne County], the juvenile court has original jurisdiction under the Revised Code[] [t]o determine the paternity of any child alleged to have been born out of wedlock pursuant to sections 3111.01 to 3111.18 of the Revised Code[.]" R.C. 3111.02(A) provides, in relevant part, that "[t]he parent and child relationship between a child and

the natural father of the child may be established by an acknowledgment of paternity * * * and pursuant to sections 3111.01 to 3111.18 * * * of the Revised Code." Among other things, the provisions set forth in R.C. 3111.01 to 3111.18 include methods for establishing a father-child relationship (paternity) between an unmarried father and his child and authorize the court that establishes the parent-child relationship to allocate parental rights and responsibilities and to grant companionship time to Grandparents, as will be explained below.

{¶23} In 2018, when Father filed his complaint to commence this case, he explicitly sought to establish a legal parent-child relationship with S.L., as well as his parental rights and responsibilities regarding the child. This case fell squarely within the original subject matter jurisdiction of the Wayne County Juvenile Court under the explicit terms of R.C. 2151.23(B)(2). R.C. 3111.06(A) and 3111.04(A)(1) further provide that "an action authorized under sections 3111.01 to 3111.18 of the Revised Code may be brought in the juvenile court or other court with jurisdiction * * * of the county in which the child * * * resides" and that the action may be brought by the man alleging himself to be the child's father. As the man alleging himself to be S.L.'s father, Father properly brought this action to establish his parent-child relationship with S.L. in the juvenile court in Wayne County, where the child resided.

{¶24} R.C. 3111.13(C) further provides that, "[a]fter entry of the judgment or order [establishing a parent-child relationship], the father may petition that he be designated the residential parent and legal custodian of the child or for parenting time rights in a proceeding separate from any action to establish paternity." The Ohio Supreme Court has briefly stated in dicta that this language in R.C. 3111.13(C) requires that a parent seek an allocation of parental rights and responsibilities in a proceeding separate from the paternity action. *See State ex rel. Richland County Children Services*, 2017-Ohio-9160, at ¶ 16. Father sought and established his

parental rights in the same proceeding as his parentage action, but no objection was raised in the trial court or on appeal.

{¶25} Even if the language of R.C. 3111.13(C) required Father to file for parental rights and responsibilities in a proceeding separate from his parentage action, his request for parental rights and responsibilities was explicitly within the juvenile court's original jurisdiction under R.C. 2151.23(B)(2) to determine matters collateral to paternity "pursuant to sections 3111.01 to 3111.18" of the Revised Code. Any procedural defect in the way that Father invoked the court's jurisdiction to allocate parental rights and responsibilities under R.C. 3111.13(C) pertained only to the trial court's exercise of its jurisdiction, not its subject matter jurisdiction. *See Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 12. Any such defect was forfeited because it was not timely raised. *Id*. at ¶ 31-32.

{¶26} Proceeding within the subject matter jurisdiction of the juvenile court to initially establish his parenting rights, Father entered into a shared parenting agreement with Mother, which was journalized by the trial court in this case. After Father became concerned that Mother was abusing drugs, he filed a motion in this case to modify their shared parenting agreement and give him temporary custody of S.L. The juvenile court also had subject matter jurisdiction over that motion because:

> "It has long been recognized in Ohio that a court retains continuing jurisdiction over its orders concerning the custody, care, and support of children * * *. A child affected by such an order is considered a ward of the court, which may always reconsider and modify its rulings when changed circumstances require it during the child's minority."

*In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, ¶ 24, quoting *Singer v. Dickinson*, 63 Ohio St.3d 408, 413-414 (1992). Moreover, R.C. 3111.16 provides that, except in circumstances

not applicable here, "[t]he court has continuing jurisdiction to modify or revoke * * * a judgment or order issued with respect to matters listed in divisions (C) and (D) of section 3111.13[.]"

{¶27}  The sole jurisdictional dispute in this appeal is whether the juvenile court also had subject matter jurisdiction to grant Grandparents companionship time with S.L.  After Father received temporary custody of S.L., he stopped allowing the child to spend time with Grandparents or the child's two younger siblings.  Consequently, Grandparents filed a motion for companionship time in this case, also seeking to invoke the court's continuing jurisdiction.  While that motion was pending and awaiting a hearing, Mother unexpectedly died.  Although Mother's death provided Grandparents with an additional ground to request companionship time under the explicit terms of parents' journalized separation agreement and R.C. 3109.11 (providing for grandparent companionship rights when a parent is deceased), the juvenile court had statutory authority to grant them companionship time before Mother's death in this case because she was never married to Father.

{¶28}  R.C. 3111.13(C), the same statute that authorized the juvenile court to allocate Father's parental rights and responsibilities after establishing his parent-child relationship with S.L., further provides that, "if the mother is unmarried, * * * the parents of the mother, and any relative of the mother may file a complaint requesting the granting of reasonable companionship or visitation rights, with the child pursuant to section 3109.12 of the Revised Code."  Although Grandparents filed a motion instead of a complaint, they were seeking to invoke the court's continuing subject matter jurisdiction in this case.  Father waived any error in the way Grandparents sought to invoke the court's exercise of its jurisdiction because he failed to raise a timely objection.  *See Pratts v. Hurley*, 2004-Ohio-1980, at ¶ 31-32.

{¶29} Grandparents' request for companionship time fell within the juvenile court's original subject matter jurisdiction under R.C. 2151.23(B)(2) to determine matters collateral to paternity "pursuant to sections 3111.01 to 3111.18 of the Revised Code" because their request fell within the court's explicit authority under R.C. 3111.13(C). *See also Wilkinson v. Stirr*, 4th Dist. Highland No. 797, 1992 WL 308272, *3 (Oct. 14, 1992) (construing the same language in prior versions of these statutes to confer subject matter jurisdiction on the juvenile court in Highland County to grant grandparent visitation time).

{¶30} Consequently, Father has failed to demonstrate that the Wayne County Court of Common Pleas, Juvenile Division, lacked subject matter to grant Grandparents companionship time with S.L. in this case. His first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO AFFORD APPELLANT FATHER THE REQUISITE SPECIAL WEIGHT FOR FATHER'S WISHES AND CONCERNS THEREBY VIOLATING HIS DUE PROCESS RIGHTS.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW BY ORDERING A MINOR MODIFICATION OF THE PARENTING PLAN WHILE THE REMAINDER TO THE PARENTING PLAN IS NOT MODIFIED AND PROVIDES FOR AN UNREASONABLE, EXCESSIVE NON-PARENT VISITATION SCHEDULE THAT IS NOT IN THE CHILD'S BEST INTERESTS AFTER IGNORING FATHER'S WISHES AND CONCERNS.

{¶31} Father's second and third assignments of error will be addressed together because they are closely related. Father challenges the merits of the trial court's decision to partially deny his motion to terminate or reduce Grandparents' companionship time with S.L. This Court reviews a trial court's order pertaining to companionship time for an abuse of discretion. *In re K.D.*, 9th Dist. Summit No. 28459, 2017-Ohio-4161, ¶ 26. Unless the trial court was unreasonable, arbitrary,

or unconscionable in ordering companionship time, we must uphold the judgment. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶32} This Court will initially address Father's argument on appeal that Grandparents, as non-parents, received an "unreasonable" and "excessive" amount of companionship time with S.L. Father asserts in his appellate brief that, because of Grandparents' companionship time with S.L. every other weekend, he has little time to spend with S.L. because he works during the week. At the oral argument in this case, Father asserted that he was merely requesting that he be able to spend a reasonable amount of time with his child. In the trial court, however, that was not the basis of his motion to reduce Grandparents' companionship time. Father's request to reduce Grandparents' companionship time was based only on allegations that they were not providing S.L. with appropriate care. This Court cannot fault the trial court for failing to address an argument that Father did not raise. *In re F.B.*, 9th Dist. Summit Nos. 28960 and 28985, 2019-Ohio-1738, ¶ 27. Moreover, the trial court did partially grant Father's motion to reduce Grandparents' time with S.L. by removing their midweek visit and limiting the amount of time that they could take S.L. on vacation.

{¶33} The juvenile court had initially granted Grandparents a standard order of companionship time with S.L. based on an agreement with Father only four months before he sought to reduce their time. The parties were represented by counsel when they entered into that agreement. Their journalized agreement was explicitly premised on Mother's recent death and the fact that S.L.'s two siblings, with whom S.L. had resided before she was placed in Father's custody, were then living with Grandparents and Father had not been facilitating any contact between the siblings. The original agreement placed great emphasis on S.L. being able to spend substantial time with her siblings. The agreement was reviewed by the guardian ad litem and the trial court

at the time and was determined to be in the best interest of S.L. Father never disputed that the original agreement was in the child's best interest.

**{¶34}** Father's primary argument is that the trial court failed to assign appropriate weight to his wishes that the companionship time of Grandparents be reduced or terminated. *See* R.C. 3109.051(D)(15). Father's expressed desire to reduce Grandparents' companionship time, however, was based entirely on his concerns about the physical and mental health of S.L. and his belief that Grandparents were abusing or neglecting the child while she was in their care. On appeal, he sets forth a two-page list of alleged physical injuries that S.L. had suffered while in Grandparent's care and other examples of how he believed the child was being neglected or mistreated in their home. Because Father's wishes were explicitly tied to his concerns about the health and well-being of S.L. while in Grandparents' care, the trial court necessarily considered whether those concerns had merit. After considering all the evidence before it, the trial court concluded that Father's concerns were unfounded, and that S.L. had received appropriate care while with Grandparents.

**{¶35}** The only witnesses to testify at the hearing were Father, Grandmother, and the most recent guardian ad litem. Father pointed to pictures that he had taken of bruises, a sunburn, and other marks on S.L.'s body, and explained that the child had been receiving mental health treatment for symptoms that had arisen since the death of Mother. Although Father had taken S.L. for medical, psychological, and psychiatric treatment, he did not offer the testimony or report of any expert who had concluded that S.L. had suffered any physical or emotional harm because of neglect or mistreatment by Grandparents.

**{¶36}** After Father moved to reduce or terminate Grandparents' companionship time, because the original guardian ad litem was unable to continue serving in that role, the trial court

appointed a new guardian ad litem. The guardian ad litem was the only disinterested witness to testify at the hearing. She had investigated S.L.'s best interest pertaining to companionship time with Grandparents more recently than the prior guardian ad litem. She expressed serious concerns about Father's apparent attempts to interfere with Grandparents' relationship with S.L. and to convince S.L. that she did not want to visit Grandparents' home.

{¶37} The guardian ad litem explained that the first time she met with S.L., the child immediately referred to her smart phone and a written journal to recite a list of reasons that she had allegedly compiled for not wanting to come to Grandparents' home. The child told her that she did not "feel safe" in their home, but when the guardian ad litem asked her to explain why, she could not. S.L. responded, "I don't know" after she thumbed through her phone and was unable to find an answer. Similarly, when S.L. read "page after page" from her journal to report "horrible things" that allegedly happened at Grandparents' home, the child was unable to pronounce many of the words that she had allegedly written.

{¶38} The guardian ad litem observed S.L. in Grandparents' home and opined that she enjoyed interacting with her siblings and other relatives in the home. She particularly noted that the child is an active child, that there are several children in the home, and that "bruises happen." The guardian ad litem had observed "no indication whatsoever" that S.L. was unsafe in Grandparents' home. She opined, on the other hand, that Father had coached the child to say negative things about Grandparents. She further explained that, after S.L. read negative things to her from her prepared list, she went back to playing with her maternal family members. The guardian ad litem expressed serious concern that Father was requiring S.L. to take notes and/or fabricate things that happened at Grandparents' home and that he took photographs of her every time she returned home with a mark on her body. The guardian ad litem emphasized that, by

putting S.L. in that situation, Father was harming her relationship with Grandparents and causing the child more anxiety.

{¶39} Consequently, despite Father's arguments to the contrary, the trial court did consider Father's wishes. The trial court did not place great emphasis on Father's wishes because it was not persuaded that his unsubstantiated concerns had merit. Moreover, as the trial court emphasized, Father's wishes were but one of several factors that the trial court was required to consider. In determining whether to modify Grandparents' companionship time with S.L., the trial court was required to consider the child's best interest, guided by the 16 factors set forth in R.C. 3109.051(D), to the extent they were applicable to the facts of this case. In its 20-page judgment entry, the trial court summarized its review of the magistrate's detailed findings on each of those factors.

{¶40} Of particular relevance here, those factors included: the child's prior interaction with Grandparents and her siblings; the child and parent's available time; the age of the child; the child's adjustment to home, school, and community; the child's wishes; the health and safety of the child; the amount of time available for the child to spend with siblings; the parent's willingness to reschedule missed time; and the wishes and concerns of the child's parent regarding companionship time. R.C. 3109.051(D)(1), (3), (4), (5), (6), (7), (8), (10), and (15). The trial court reasonably considered that S.L. had a strong bond with her maternal family, especially her young siblings, and needed to be able to spend a significant amount of time with them. Emphasizing that S.L. needs to maintain a bond with her siblings and other maternal relatives, the guardian ad litem did not support Father's request to reduce S.L.'s time at Grandparents' home. Father had not facilitated the ability of the maternal relatives to maintain a relationship with S.L. and had made deliberate efforts to schedule events for S.L. so that she was unavailable for court-ordered

companionship time. On appeal, Father does not challenge the trial court's order that held him in contempt for failing to abide by the prior order pertaining to Grandparents' companionship time.

**{¶41}** Consequently, Father has failed to demonstrate that the trial court acted unreasonably or arbitrarily in overruling his objections to the magistrate's decision that only partially granted his motion to reduce Grandparents' companionship time with S.L. Father's second and third assignments of error are overruled.

III.

**{¶42}** Father's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT

SUTTON, P. J.
CONCURS.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

**{¶43}** Although I agree with the majority that the juvenile court had subject matter jurisdiction to grant companionship time to Grandparents, I respectfully dissent from the judgment of the majority insofar as it overrules Father's second and third assignments of error.

**{¶44}** Father supported his request to reduce Grandparents' companionship time with evidence that he believed that the child was being mistreated, which the trial court did not believe. Nevertheless, Father testified at the hearing that S.L. having companionship time with Grandparents every other weekend deprived him of time with the child because he works long days during the week and one day most weekends. In its best interest determination, the trial court was explicitly required to consider Father's employment schedule, as well as the child's expressed wishes, and Father's wishes and concerns under R.C. 3109.051(D)(3), (6), and (15), all of which weighed in favor of a reduction in Grandparents' companionship time. For these reasons, I believe that the trial court's minor modification in this case continued to allow Grandparents to have an unreasonable amount of companionship time with S.L.

{¶45} Therefore, I would sustain Father's second and third assignments of error, reverse the judgment, and remand the matter to the trial court to further reduce Grandparents' companionship time to a more reasonable schedule.

APPEARANCES:

BLAISE R. MEEKER, Attorney at Law, for Appellant.

REBECCA A. CLARK, Attorney at Law, for Appellee.

RENEE J. JACKWOOD, Guardian ad Litem.