[Cite as *In re C.T.*, 2022-Ohio-3464.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: C.T.

C.A. No.     30156

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 20-05-354

DECISION AND JOURNAL ENTRY

Dated: September 30, 2022

SUTTON, Judge.

{¶1}    Appellant, J.B. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed his minor child in the legal custody of the maternal grandparents ("Grandparents").  This Court affirms.

I.

{¶2}    Father is the biological father of C.T., born June 16, 2016.  Father established his paternity during this case through DNA testing.   The child's mother ("Mother") waived her right to participate in the hearing and agreed to Grandparents receiving legal custody.

{¶3}    On May 20, 2020, Summit County Children Services Board ("CSB") filed a complaint, alleging that C.T. was an abused, neglected, and dependent child.  At the time the complaint was filed, Mother had recently overdosed on drugs in the home.  Mother had a long history of substance abuse but reported that she had been sober until recently.  CSB had established a voluntary case plan with her, but Mother was not complying with the conditions of the voluntary

plan. Father was incarcerated at that time on charges of felony domestic violence for allegedly punching the paternal grandfather in the face. The complaint further alleged that both parents had a long history of mental health problems, and domestic violence in their 10-year relationship; the condition of the home was unsuitable; and Mother and Father were unable to meet the child's basic needs.

{¶4} C.T. was initially placed in the emergency temporary custody of Grandparents under an ex parte order. After the trial court adjudicated C.T. a neglected and dependent child, it placed him in the temporary custody of Grandparents under an order of protective supervision and adopted the initial case plan as an order of the court.

{¶5} The initial case plan identified Father as the alleged father and required him to engage in reunification services. The reunification goals for Father included that he address his history as the perpetrator of domestic violence. During the one-month period between CSB filing and the trial court adopting the case plan, however, Father was arrested on another charge of felony domestic violence. The record does not include records from Father's criminal cases or specific testimony about them, but some underlying facts can be gleaned from unchallenged factual findings in the record.

{¶6} When this case began, Father was incarcerated on felony domestic violence charges for perpetrating violence against his father. While he was apparently released from jail, Father committed another act of violence against Mother. Father was again charged with felony domestic violence, was reincarcerated, and remained incarcerated throughout the remainder of this case. Father was eventually convicted of felony domestic violence and was sentenced to three years' incarceration on one or both offenses.

{¶7} Because neither parent could provide a stable home for C.T. and the child was thriving in Grandparents' home, CSB eventually moved for C.T. to be placed in their legal custody. Father alternatively moved for a six-month extension of temporary custody. The matter proceeded to a dispositional hearing before a magistrate on June 28, 2021. Father testified from prison via Zoom that the attorney who represented him in his criminal case was going to apply for judicial release, but the paperwork had not yet been filed. At the time of the hearing, the evidence demonstrated that Father's term of incarceration was scheduled to end two years later, on June 27, 2023.

{¶8} Following the hearing, the magistrate determined that it was in the best interest of C.T. to remain with Grandparents and entered a dispositional decision that placed him in their legal custody. The trial court adopted the decision the same day, pending the filing of timely, written objections.

{¶9} Father timely objected to the magistrate's legal custody decision, asserting that it was not supported by the evidence presented at the hearing. The trial court overruled Father's objections and again adopted the decision of the magistrate. The trial court independently ordered that C.T. be placed in the legal custody of Grandparents and that, after Father is released from prison, he shall have supervised visitation "as arranged by [Grandparents.]" The order further provided that, if the parties could not agree on a schedule, "Father shall file a motion requesting that this order be modified by the Court." Father appeals and raises two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT VIOLATED FATHER'S RIGHTS TO DUE PROCESS AND ABUSED ITS DISCRETION WHEN IT PLACED THE CHILD INTO THE LEGAL CUSTODY OF RELATIVES WHEN [CSB] DID NOT ADD FATHER TO THE CASE PLAN AFTER HIS PATERNITY WAS JUDICIALLY

ESTABLISHED, NOR GIVE HIM A REASONABLE AMOUNT OF TIME TO COMPLY WITH CASE PLAN OBJECTIVES.

{¶10} Father asserts that the trial court erred by awarding legal custody to Grandparents because he was not afforded reasonable case planning efforts during this case. He further argues that this Court must apply a de novo standard of review to this assignment of error because it involves his due process rights, but he is mistaken. Because the legal custody motion was originally decided by a magistrate, to preserve this issue for appellate review, Father was required to comply with the requirements of Juv.R. 40(D).

{¶11} Juv.R. 40(D)(3)(b)(iv) provides, in relevant part, that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." The waiver rule of Juv.R. 40(D)(3)(b)(iv) "embodies the long-recognized principle that the failure to draw the trial court's attention to possible error, by objection or otherwise, when the error could have been corrected, results in a waiver of the issue for purposes of appeal." *In re Etter*, 134 Ohio App.3d 484, 492 (1st Dist.1998), citing *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 121 (1997).

{¶12} Although Father filed timely objections to the magistrate's decision, he asserted only that the evidence did not support the magistrate's decision that legal custody to Grandparents was in the best interest of C.T. He did not object to the case plan, or the reunification efforts made by the agency. On appeal, Father does not argue or demonstrate that the case plan or reunification efforts constituted plain error. Because Father has failed to comply with the requirements of Juv.R. 40(D)(3)(b)(iv), this Court need not reach the merits of his first assignment of error.

{¶13} Moreover, this Court notes Father's arguments are not persuasive. The record demonstrates that the original case plan and all subsequent case plans in this case included Father

and provided him with reunification goals and services. The original case plan required both parents to secure and maintain stable income and housing and demonstrate the ability to meet their basic household expenses. Specifically pertaining to Father, the original case plan required him to address his long-standing history as a perpetrator of domestic violence. To that end, he was required to engage in anger management treatment with a provider approved by CSB; engage in parenting classes and demonstrate appropriate parenting with Mother; demonstrate that he could utilize non-violent coping skills when angry; and resolve his pending criminal charges and "refrain from all further violent criminal activity[.]"

{¶14} When the case plan was filed, Father was facing one charge of felony domestic violence with the paternal grandfather as the victim. By the time the case plan was adopted one month later, Father had committed a second felony domestic violence offense against Mother. Father was incarcerated on one or both of those offenses throughout most of this case. By the time of the hearing, Father had two years remaining on his three-year term of incarceration.

{¶15} Father incorrectly asserts that he was given only a few months to work on the case plan. By the time of the legal custody hearing, the court-ordered requirements of the case plan had been in place for nine months, but Father had done nothing to comply with the reunification requirements, except to engage in some programs while in prison. Father's inability to reunify with his child was not caused by CSB failing to provide him with case plan reunification services. Instead, it was Father's own conduct of repeatedly committing acts of felony domestic violence that had led to his incarceration and inability to work toward reunification with C.T.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN ERROR WHEN IT ORDERED THAT FATHER SHALL HAVE SUPERVISED VISITATION WITH HIS CHILD AS ARRANGED BY THE LEGAL CUSTODIANS.

{¶16} Next, Father argues that the trial court abused its discretion when it ordered that, after his release from prison, he would have supervised visits with C.T. "as arranged by [Grandparents.]" Father argues that, by allowing Grandparents to control when Father can visit, the order is "unworkable." Although Father did not raise this issue in his objections to the magistrate's decision, he has argued on appeal that the visitation order constituted plain error.

{¶17} When C.T. was placed in the legal custody of Grandparents, Father retained "residual" parental rights, privileges, and responsibilities, which include "the *privilege* of reasonable visitation[.]" (Emphasis added.) R.C. 2151.353(A)(3)(c). *See also* R.C. 2151.011(B)(50). Under R.C. 2151.359(A)(1), the trial court explicitly retained the authority to "[c]ontrol any [parental] conduct or relationship that will be detrimental or harmful to the child[,]" which includes the authority to limit or even prohibit parental visitation with a child placed in the legal custody of another adult. *See In re M.B.*, 9th Dist. Lorain Nos. 11CA010060 and 11CA010062, 2012-Ohio-5428, ¶ 34. In determining the appropriate visitation for a parent who has lost legal custody of the child, the trial court must consider the totality of circumstances affecting the best interest of the child. *In re K.D.*, 9th Dist. Summit No. 28459, 2017-Ohio-4161, ¶ 27.

{¶18} The trial court ordered that, after Father is released from prison, he shall have supervised visits with C.T. "as arranged by [Grandparents[,]" just as his visitation had been ordered throughout this case. Given that Father was incarcerated during most of this case and did not attempt to visit when he was not, that order gave the parties the flexibility to adapt to Father's

changing ability and/or desire to visit. There was no evidence before the trial court to suggest that Grandparents would not facilitate visitation between Father and C.T. Evidence about Grandparents' past behavior, as well as their testimony, demonstrated that they had facilitated Father's ability to visit with C.T. over the phone. They further testified that they would be willing to facilitate in-person visits after Father is released from prison.

{¶19} Father argues that this schedule is unworkable because the parties may not be able to agree on a schedule in the future. The visitation order contemplates such a possibility, however, as it explicitly provides that if the parties "are unable to agree to a visitation schedule, Father shall file a motion requesting that this order be modified by the Court." Consequently, Father has failed to demonstrate that the visitation order is unworkable or that the trial court otherwise committed plain error in its visitation order. Father's second assignment of error is overruled.

## III.

{¶20} Father did not comply with the requirements of Juv.R. 40(D)(3)(b)(iv). Accordingly, this Court does not reach the merits of his first assignment of error. His second assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

CARR, P. J.
POWELL, J.
CONCUR.

(Powell, J. of the Twelfth District Court of Appeals, sitting by assignment.)

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

MARK SWEENEY, Attorney at Law, for Appellee.

RANDALL C. BRAY, Guardian ad Litem.