**[Cite as *In re C.B.*, 2025-Ohio-2759.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: C.B.

C.A. No. 31254

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DN 23-01-000038

DECISION AND JOURNAL ENTRY

Dated: August 6, 2025

STEVENSON, Presiding Judge.

{¶1} Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that imposed restrictions on his visitation with his child. Because those restrictions are reasonable, this Court affirms.

I.

{¶2} Mother and Father are the biological parents of C.B., born December 8, 2013. The parents were never married. In 2018, Father filed a complaint in the domestic relations court to establish a parent-child relationship with C.B. In 2019, that court issued a judgment granting Father companionship with the child on alternating weeks, effectively placing her with Father half of the time.

{¶3} In 2021, Summit County Children Services Board ("CSB" or "the agency") removed C.B. from Mother's home and filed a child welfare complaint in the Summit County Juvenile Court. After the child's adjudication and initial disposition, the juvenile court adopted

the agency's case plan objectives for both parents. Father refused to participate in any services or otherwise comply with his objectives, arguing that he was a non-offending party. The juvenile court ultimately awarded legal custody of C.B. to her maternal grandparents ("Grandparents"). Neither parent maintained a relationship with the child while she lived with Grandparents.

{¶4} In 2023, CSB removed C.B. from Grandparents' custody after the child disclosed that her minor maternal uncle in the home had been sexually abusing her for two years. The agency filed a complaint alleging that C.B. was an abused, neglected, and dependent child. Grandparents, Mother, and Father all stipulated at the adjudicatory hearing that the child was abused and dependent. At that time, Grandparents requested that they be removed as parties from the case because they did not wish to seek reunification as the child's legal custodians.

{¶5} After the dispositional hearing, the juvenile court placed C.B. in CSB's temporary custody and adopted the agency's case plan as an order. The case plan required both parents to obtain mental health assessments and follow recommendations, and to demonstrate the ability to meet the child's basic needs. Mother was required to obtain a substance abuse assessment, while Father was required to submit to drug screens. Only if his drug screens were positive did he need to submit to a substance abuse assessment.

{¶6} Father objected to the agency's case plan after it was first filed and again filed formal objections to the magistrate's decision adopting the case plan. Father argued that his case plan objectives were unreasonable because CSB included no allegations regarding him in the complaint. The agency responded, asserting that Father's history with CSB, his failure to comply with his case plan objectives in the 2021 case, and his observed anger management issues all warranted measures to assess Father's ability to provide a safe and stable home for the child. The juvenile court overruled Father's objections and found that CSB had adequately tailored the case

plan objectives to address concerns and foster a plan for C.B.'s reunification with either parent. Father did not appeal. CSB later amended the case plan to add Mother's live-in boyfriend who was the biological father of another of Mother's children also in CSB's temporary custody.

{¶7} Eleven months into the case, CSB moved for a first six-month extension of temporary custody based solely on Mother's substantial progress on her case plan objectives. The agency noted that Father continued to refuse all case plan services. After a hearing, the magistrate granted the six-month extension based on Mother's case plan compliance, while finding that Father had not engaged in reunification services and was no longer visiting with the child. In addition, the magistrate found that C.B. had been "detrimentally impacted by Father once again ceasing visitation." Father did not object to the magistrate's decision.

{¶8} After almost a year of Father's refusal to participate in case plan services, coupled with his abandonment of the child, CSB moved for a reasonable efforts bypass determination as to him. After a hearing, the magistrate granted the agency's motion and relieved CSB of its obligation to use reasonable efforts to facilitate reunification of the child with Father. The magistrate found that Father had made no progress on his case plan objectives and had not visited with the child in almost six months. Moreover, the magistrate found that the child becomes sad and withdrawn when discussing Father. While Mother was granted liberal visitation with C.B., the juvenile court left Father's visitation in the discretion of CSB and the guardian ad litem in consideration of the child's wishes. Father did not object. The agency restructured the case plan to move Father's objectives under the child's general objectives.

{¶9} CSB moved to modify its order of temporary custody to legal custody to Mother under the agency's protective supervision. Near the end of the hearing on the motion, the magistrate terminated Father's remote presence after Father continued to disrupt the proceedings.

The magistrate found that it was in the child's best interest to place her in Mother's legal custody under CSB's protective supervision. Around this same time, the juvenile court returned Mother's and her boyfriend's toddler to Mother's legal custody under protective supervision, as well. The magistrate maintained Father's visitation in the discretion of the agency and guardian ad litem in consideration of both the child's wishes and her counselor's recommendations. Father did not object.

{¶10} Thereafter, CSB moved to terminate its protective supervision and close the siblings' cases. The guardian ad litem agreed. At the hearing, Father did not challenge Mother's legal custody but merely asked to be heard on the issue of visitation. The magistrate terminated the agency's protective supervision, maintained C.B. and her younger sister in Mother's legal custody, and ordered the cases closed. The magistrate ordered that Father could visit C.B. in Mother's discretion in consideration of the child's wishes and her counselor's input and recommendations under supervised conditions at a commercial visitation center at Father's expense. Father filed timely objections.

{¶11} In his objections, Father challenged the lack of restoration of his companionship rights awarded in 2019 by the domestic relations court. In his evidentiary challenge, he emphasized that he was a "non-offending parent" and that his case plan objectives were unreasonable. The juvenile court overruled Father's objections, citing concerns regarding his cessation of visits and lack of case plan compliance despite historical and apparent ongoing concerns regarding his ability to parent the child in a safe and stable environment.

{¶12} In its judgment, the juvenile court reiterated all orders relevant to Father's involvement with the child as follows:

4. Father may have contact or parenting time at the discretion of Mother, who shall consider the input and recommendations from [C.B.'s] counselor, as well as [C.B.'s] wishes.

5. If visitation would occur pursuant to Order #4, Mother shall not be responsible for supervision of Father's visitation. The parties may utilize a commercial visitation center at Father's expense.

6. Father may have contact with [C.B.'s] counselor to share Father's concerns and perspective and to receive updates that the counselor is able to provide about [C.B.'s] progress.

7. Father may join in counseling with [C.B.] if [C.B.'s] counselor deems it therapeutically appropriate or refers [C.B.] and Father to another provider for joint counseling.

**{¶13}** Father timely appealed. He raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ABUSED ITS DISCRETION WHEN THEY LIMITED FATHER'S VISITATION TO THE DISCRETION OF MOTHER AND ONLY WHILE SUPERVISED WHEN THAT IS NOT IN THE BEST INTEREST OF THE CHILD.

**{¶14}** Father argues that the juvenile court abused its discretion by placing restrictions on his visitation with C.B. Specifically, he argues that a definitively structured, court-ordered visitation schedule is necessary to meet the best interest of the child. This Court disagrees.

**{¶15}** An award of parental visitation is left to the discretion of the juvenile court. *In re C.P.*, 2023-Ohio-1350, ¶ 36 (9th Dist.). This Court will not reverse a visitation order unless the order was unreasonable, arbitrary, or unconscionable. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When reviewing a ruling for an abuse of discretion, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶16} A noncustodial parent retains residual parent rights, responsibilities, and certain privileges including the "privilege of reasonable visitation[.]" *See* R.C. 2151.353(A)(3)(c); R.C. 2151.011(B)(50). Nevertheless, the juvenile court may issue orders limiting a parent's interactions with a child when necessary to prevent detriment or harm to the child. R.C. 2151.359(A)(1)(a). This "includes the authority to limit or even prohibit parental visitation with a child placed in the legal custody or another adult." *In re C.T.*, 2022-Ohio-3464, ¶ 17 (9th Dist.). "In ordering visitation, the juvenile court must consider the totality of the circumstances as they relate to the child's best interest." (Internal quotations omitted.) *In re K.D.*, 2017-Ohio-4161, ¶ 27 (9th Dist.).

{¶17} As an initial matter, this Court notes that the juvenile court did not expressly limit Father to supervised visits. The trial court left the parameters of Father's visitation in Mother's discretion in consideration of the child's wishes and her counselor's input and recommendations. The juvenile court acknowledged the strained relationship between the parents and simply relieved Mother of any obligation to personally supervise Father's visits, if she found such visits appropriate. If Mother, in consideration of the child's and counselor's input, were to agree to visits between Father and C.B. and yet determine that those visits should be supervised, the trial court merely ordered that the parents "may" use a commercial visitation center. Accordingly, Mother retains the discretion to approve other third parties to supervise Father's visits or to dispel with the need for supervision at all. *See In re B.D.*, 2022-Ohio-1832, ¶ 46 (9th Dist.). Therefore, Father's argument that he is restricted to supervised visits with the child is not well taken.

{¶18} Moreover, the juvenile court did not grant Mother unfettered discretion to allow or disallow visits between Father and the child. Instead, Mother must consider both the child's wishes and the counselor's recommendations when determining whether to permit contact between Father and C.B. In addition, the juvenile court authorized Father's contact with the child's counselor so

that he might share his thoughts and concerns, understand the child's therapeutic needs, and learn how best to pursue a healthy relationship with C.B. Accordingly, unlike the situation in *In re K.D.* at ¶ 28 (9th Dist.), where a father was granted sole discretion over a mother's visitation when the parents had experienced long term hostility with no likely expectation of détente, the evidence in this case demonstrated that the caseworker and guardian ad litem believed that Mother would not unreasonably deny Father contact with the child. In fact, the guardian ad litem testified that she believed that Mother would reach out to Father if the child indicated she wanted to see him. In addressing the parents' relationship, the guardian ad litem emphasized that it was Father who showed animosity towards Mother and her boyfriend, and that she had witnessed Father speaking negatively about Mother to the child. On the other hand, the guardian ad litem did not report that Mother had demonstrated ill will towards Father. Significantly, Father did not testify that he had concerns that Mother would interfere with his ability to develop a relationship with C.B.

{¶19} Furthermore, this Court cannot conclude that the juvenile court was unreasonable when it left Father's contact with C.B. in Mother's discretion, rather than establishing a set visitation schedule for him in this case. The evidence demonstrated that the child has endured repeated and significant traumas during her life. She experienced disruptions from multiple homes, sexual abuse by a relative, the stress of preparing for a delinquency proceeding involving the perpetrator, bullying and rejection by family members who refused to believe her claims of abuse, the death of a sibling, and Father's repeated unexplained absences from her life. C.B. was working with a counselor to address these traumatic events and required consistency and prioritization by her caregivers.

{¶20} Both the caseworker and guardian ad litem testified regarding Father's behaviors and attitudes that raised concerns regarding his ability to engage in a healthy relationship with the

child. Notwithstanding case plan objectives designed to alleviate such concerns, Father adamantly refused to engage in services or otherwise cooperate to demonstrate that he and the child could enjoy appropriate interactions. When confronted about behaviors like falling asleep during visits and not confirming his intent to appear, Father became belligerent and stopped coming to visits. Father demonstrated no commitment to putting the needs of the child first in her best interest. Instead, he stubbornly clung to the mantra that he was a non-offending parent who should not have to demonstrate the ability to provide a safe and appropriate environment for the child.

{¶21} Father admitted that he has used methamphetamine in the past but refused to discuss his mental health history. He emphasized that any issues he might have had that could impact his parenting ability were addressed in the 2018 domestic relations case and no longer relevant. Father testified that C.B. "begged for" (p.50) alternating weekly visits, and he refused to believe that the child was no longer comfortable spending time with him. Both the caseworker and guardian ad litem testified, however, that C.B. is adamant that she does not want to visit with Father at this time. They explained that the child is angry and resentful because Father had not attended any visits during the past nine months.

{¶22} The guardian ad litem reported that C.B. is not emotionally ready to resume visitation with Father because she continues to struggle with his abandonment of her during both the 2021 and current juvenile court cases. Based on her discussions with the child and her counselor, the guardian ad litem opined that forcing C.B. to visit with Father at this time would cause additional trauma and she recommended delaying Father-Child contact until both the child and her counselor agreed C.B. was equipped to cope with her feelings of anger and abandonment.

{¶23} Given Father's lack of cooperation during the case, no evidence of his current ability to interact appropriately with the child, C.B.'s ongoing need to address the multiple traumas

she has experienced, her insistent refusal to resume contact with Father, and the recommendation of the guardian ad litem, the juvenile court's decision not to establish a set visitation schedule for Father was not unreasonable. Father has permission to seek information regarding the child's progress in counseling and make his perspective and desires known, so that C.B.'s counselor can work with the child towards re-establishing contact with Father, when appropriate. Under these circumstances, the juvenile court did not abuse its discretion by leaving the parameters of Father's visitation indefinite and in consideration of the active involvement of Mother, the wishes of the child, and the input of the child's counselor. Father's assignment of error is overruled.

III.

{¶24} Father's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT

SUTTON, J.
<u>CONCURS.</u>

CARR, J.
<u>CONCURRING IN PART, AND DISSENTING IN PART.</u>

{¶25}  I concur with the majority opinion except in relation to its determination that supervised visitation was not required by the trial court's order.

{¶26}  While the trial court's order number 4 leaves Father's "contact or parenting time at the discretion of Mother," without mentioning supervision, Father challenged the supervision requirement in his objections.  The juvenile court thereafter in its analysis wrote that it "cannot find that it is in [C.B.'s] best interest to have unsupervised visitation with Father at this time."  The trial court clearly meant for visitation to be supervised.

{¶27}  Although Father challenged the requirement that his visits be supervised in the text of his assignment of error, he did not subsequently develop that argument in his brief.  Accordingly, he has not demonstrated error as to the requirement for supervision.

{¶28}  I respectfully dissent from the majority on this issue alone and would hold that any visitation by Father must be supervised.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.

EMILY M. HETE, Attorney at Law, for Appellee.